**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WISCONSIN**

**MICHAEL GREEN,**

Plaintiff,                                                           26-cv-396-wmc

v.

**UNIVERSITY OF WISCONSIN HOSPITALS AND CLINICS AUTHORITY,**

Defendant.

---

## I. JURISDICTION AND VENUE

1. This civil action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights secured by the Fourteenth Amendment to the United States Constitution.
2. This Court has original subject matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 28 U.S.C. § 1343(a)(3) (Civil Rights).
3. This Court has supplemental jurisdiction over Plaintiff's state law tort claim of Medical Battery pursuant to 28 U.S.C. § 1367(a), as the state law claim forms part of the same case or controversy and arises from a common nucleus of operative facts as the federal claims.
4. Venue is proper in the Western District of Wisconsin under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Dane County, Wisconsin, which is located within this judicial district.

## II. PARTIES

5. **Plaintiff Michael Green** is an adult citizen of the United States, currently residing in El Paso, Texas. At all times relevant to the events described in this Complaint, Plaintiff was present in Dane County, Wisconsin.
6. **Defendant University of Wisconsin Hospitals and Clinics Authority (UWHCA)** is a public body corporate and politic created by the Wisconsin legislature pursuant to Wis. Stat. § 233.01 *et seq*. UWHCA operates University Hospital located at 600 Highland Avenue, Madison, Wisconsin. UWHCA is not an "arm of the state" for purposes of Eleventh Amendment immunity and is a "person" subject to suit under 42 U.S.C. § 1983. Plaintiff's constitutional injuries were caused by UWHCA's policies, practices, customs, and failures in training and supervision, giving rise to *Monell* liability. At all times relevant, Defendant acted under color of state law.

## III. STATEMENT OF FACTS

**A. Demographics and Systemic Context**

7. Dane County Jail has long maintained a disproportionately high percentage of Black detainees. Although Black residents comprise approximately 6% of the county's population, Black individuals routinely constitute between 50% and 60% of the jail population.

8. Plaintiff's detention occurred within this broader context of racial disparity, which forms part of the environment in which jail-to-hospital "medical clearance" practices are applied to detainees.

9. This demographic imbalance is relevant to understanding the systemic nature of the custodial practices at issue and the foreseeable impact of Defendant UWHCA's policies on detainees such as Plaintiff.

**B. The Seizure and Transport**

10. On or about July 16, 2024, Plaintiff was in the custody of the Dane County Jail as a pretrial detainee awaiting release on a $150.00 bail for a minor disorderly conduct charge.

11. While at the jail, an altercation occurred wherein Plaintiff's internal cardioverter-defibrillator (ICD) was discussed. Despite Plaintiff explicitly stating he did not require medical attention and had not received a shock at the jail, jail staff mandated his transport to the hospital.

12. Jail staff threatened the physical use of force if Plaintiff did not comply with transport. Relying on advice from the arriving EMT to simply go to the hospital and decline services, Plaintiff reluctantly submitted to transport under duress.

**C. Lack of Medical Emergency and Explicit Refusal of Consent**

13. Upon arrival at Defendant UWHCA's Emergency Department via EMS, Plaintiff was objectively stable and presented no acute, life-threatening medical emergency.

14. Defendant UWHCA's own medical records from July 17, 2024, confirm Plaintiff "denies all symptoms," "States feels well," and "Did not fall or lose consciousness." Furthermore, UWHCA nursing staff documented Plaintiff's vitals as "NSR. VSS" (Normal Sinus Rhythm, Vital Signs Stable).

15. From the moment of arrival, Plaintiff repeatedly and explicitly refused medical testing, monitoring, and treatment. At 01:25 on July 17, 2024, Defendant's staff explicitly documented: "Pt refusing lab work, is only agreeable to pacer interrogation at this time."

16. By 03:09, Defendant's staff documented escalating refusal, noting: "Patient refusing all monitoring devices at this time."

**D. The "Medical Clearing" Custom and Coerced Detention**

17. Plaintiff was subjected to a widespread, unconstitutional custom and practice coordinated between Defendant UWHCA and local law enforcement. This custom was so persistent and widespread within UWHCA's Emergency Department that it constituted a standard operating procedure.

18. Under this *de facto* policy, the jail refused to accept Plaintiff back into custody without a "medical clearance" from the hospital, and Defendant UWHCA conditioned Plaintiff's release on his submission to unwanted medical testing.

19. At 10:25, a guard reported to nursing staff that Plaintiff would like to leave Against Medical Advice (AMA). Defendant's records note Plaintiff "wants to get home to cat and not proceed with any further testing."

20. Plaintiff was not permitted to leave the hospital despite repeatedly requesting discharge, and was informed he could not return to the jail or post bail unless he submitted to testing.

21. From approximately 01:00 on July 17, 2024, until his administrative discharge on July 18, 2024, Plaintiff was not free to leave the Emergency Department and was held for non-emergency evaluation.

22. After hours of unconstitutional detention, Plaintiff relented to testing strictly to facilitate his release. Defendant UWHCA conditioned Plaintiff's release on his submission to unwanted medical testing, rendering any subsequent compliance legally invalid as voluntary consent.

23. On information and belief, UWHCA's Emergency Department routinely conditions the discharge of detainees on their submission to non-emergency diagnostic testing, regardless of patient consent or clinical necessity. This practice is sufficiently widespread and permanent to constitute a custom attributable to UWHCA under *Monell*.

## IV. CAUSES OF ACTION

**COUNT I**

**Violation of the Fourteenth Amendment to the U.S. Constitution**

**(42 U.S.C. § 1983 – Deprivation of Liberty)**

24. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

25. Under the Fourteenth Amendment, Plaintiff possesses a clearly established right to bodily autonomy, to refuse unwanted medical treatment, and to be free from involuntary detention absent medical necessity, lawful authority, or valid consent.

26. Defendant UWHCA, acting under color of state law, deprived Plaintiff of these rights by refusing to permit him to leave the Emergency Department and by conditioning his release on compliance with unwanted medical testing, despite the absence of an emergency, a court order, or valid consent.

27. As a direct and proximate result of Defendant's actions, Plaintiff suffered a deprivation of liberty, psychological distress, and a violation of his fundamental constitutional rights.

28. Pursuant to *Monell v. Dep't of Soc. Servs.*, Defendant UWHCA is liable because Plaintiff's constitutional injuries were directly caused by UWHCA's longstanding custom and practice of detaining detainees for non-emergency "medical clearance" evaluations, a practice that was widespread, known to supervisory personnel, and routinely applied to detainees transferred from the Dane County Jail.

**COUNT II**

**State Law Tort – Medical Battery**

29. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.
30. Under Wisconsin state law, a medical battery occurs when a healthcare provider performs a procedure, diagnostic test, or evaluation without the valid, informed, and voluntary consent of the patient.
31. No emergency or exigent circumstance existed that would have permitted Defendant to override Plaintiff's explicit refusal of medical testing under Wisconsin law.
32. Plaintiff explicitly and repeatedly refused medical evaluation and testing upon his arrival at Defendant's facility.
33. Defendant UWHCA's staff intentionally ignored Plaintiff's explicit refusals and subjected him to continued medical monitoring and evaluation.
34. Any subsequent submission to testing by Plaintiff was obtained only after Defendant conditioned his ability to leave the facility on compliance, rendering such consent involuntary and legally invalid.
35. Defendant's conduct was intentional and offensive, constituting a battery rather than medical negligence.
36. As a direct and proximate result of Defendant's medical battery, Plaintiff suffered dignitary harm, psychological distress, and deprivation of his bodily autonomy.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant UWHCA, granting the following relief:

A. Compensatory damages in an amount to be determined at trial to fairly and adequately compensate Plaintiff for his loss of liberty, psychological distress, and dignitary harm;

B. Punitive damages on Plaintiff's state-law medical battery claim, in an amount sufficient to punish and deter intentional violations of bodily autonomy;

C. A declaratory judgment stating that Defendant UWHCA's practice of involuntarily holding detainees for non-emergency "medical clearance" without their consent violates the Fourteenth Amendment;

D. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

E. Costs of suit, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 (should Plaintiff retain counsel); and

F. Such other and further relief as this Court deems just and proper.

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**Respectfully Submitted,**

Dated: April 28, 2026

---

**Michael Green**, *Pro Se*

7894 Gateway Blvd E, Apt.230

El Paso, TX 79907

336greenmike@gmail.com

915-359-6575